UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MEGAN PRYKE, on behalf of herself and all others similarly situated, | ) ) ) | CASE NO. 3:21-cv-00681 |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | ) ) | |
| FIRST SOLAR, INC., | ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND** |
| Defendant. | ) ) ) | **STIPULATION OF DISMISSAL WITH PREJUDICE** |

**I.   INTRODUCTION**

Representative Plaintiff Megan Whitt (formerly Pryke) (" Representative Plaintiff"), on behalf of herself and all Opt-In Plaintiffs ("Opt-In Party Plaintiffs" and collectively, the "Plaintiffs"), and Defendant First Solar, Inc. ("First Solar" and collectively, the "Parties") respectfully move this Court to approve the proposed Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement") attached as Exhibit 1.

The proposed Settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes.  Plaintiff asserted that First Solar unlawfully failed to include all renumeration earned by Plaintiff and other similarly situated employees in their regular rates of pay for purposes of calculating their overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.  First Solar expressly denies that it violated the FLSA ") and corresponding state wage and hour statutes.

If approved by the Court, the Settlement will provide for the issuance of individual payments to all Plaintiffs within fourteen (14) days of approval by this Court.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length, good faith settlement negotiations among the Parties, conducted by experienced counsel and with the assistance of Magistrate Judge Darrell A. Clay, and reached on April 27, 2022.

The settlement documents submitted for approval or Order by the Court consist of the following:

Exhibit 1: Joint Stipulation of Settlement and Release

Exhibit 2: Declaration of Chastity L. Christy

Exhibit 3: Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On March 26, 2021, Representative Plaintiff filed this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and alleged that First Solar unlawfully failed to include all renumeration earned by Plaintiff and other similarly situated employees in their regular rates of pay for purposes of calculating their overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03 (the "Action"). (Doc. No. 1.)

On August 2, 2021, Representative Plaintiff filed her Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs. (Doc. 9.)  First Solar filed its Opposition Brief on September 10, 2021. (Doc. 14.) and Representative Plaintiff filed her Reply Brief on September 24, 2021. (Doc. 15.)  On October 29, 2021, the Court granted Representative Plaintiff's Motion.  (Doc. 17.)  The Court conditionally certified the following class:

> All current and former non-exempt hourly manufacturing employees employed by First Solar, Inc. who were paid any type of bonus and/or shift premium at any time between October 29, 2018 and November 16, 2021.

Notice was sent to the putative class on December 13, 2021, and the Opt-In Period closed on January 27, 2022. (Exhibit 2, Christy Declaration, ¶ 17.)  In addition to Representative Plaintiff, 218 individuals opted in as Plaintiffs.  One individual was withdrawn early in the case and 55 individuals had no damages and, thus, were withdrawn from the Action on May 6, 2022 per the agreement made during the mediation. (*Id*.)  In addition to Representative Plaintiff, 162 Opt-In Party Plaintiffs remain in this action and are included in this Settlement. (*Id*.)

B.    **Negotiation of The Settlement**

Between November 2021 and April 2022, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiffs' claims and First Solar's defenses to such claims. (Ex. 2, Christy Declaration, ¶ 22.)  This included the production of time and pay data of the Plaintiffs and the calculations of Plaintiffs' alleged overtime damages. (*ld.*)

Between June 2021 and April 2022, the Parties engaged in extensive legal discussion and correspondence, which included numerous and lengthy discussions and written communications. (*Id.* at ¶ 23.)  Between April 6, 2022 and April 27, 2022, the Parties engaged in extensive settlement negotiations. (*Id.* at ¶ 24.)  On April 27, 2022, the Parties attended a mediation with Magistrate Judge Darrell A. Clay, and the Parties reached an agreement to settle the Action on the terms set

forth in the Settlement Agreement attached as Exhibit 1. (*Id.* at ¶ 25.) The Parties reached the proposed settlement in this matter after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining. (*Id.*)

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 162 Opt-In Party Plaintiffs.

The Total Settlement amount is One Hundred Twenty-Five Thousand Dollars ($125,000.00), which sum will cover: (a) all of the individual payments to Plaintiffs; (b) Representative Plaintiff's representative payment; and (c) Plaintiffs' Counsel's attorneys' fees and expenses incurred in litigation this Action. (Ex. 2, ¶ 31.)

Fifty-One Thousand Nine Hundred Ninety-Eight Dollars and Forty-Four Cents ($51,998.44) will be allocated to Plaintiffs for payment of overtime compensation and Sixteen Thousand Six Hundred Seventy-Nine Dollars and Fifty-Six Cents ($16,679.56) will be allocated to Plaintiffs for payment of liquidated damages. (*Id.* at ¶ 34.) The Class Payment will be divided into Individual Payments to Plaintiffs. (*Id.*) The Individual Payments were calculated proportionally on each Plaintiff's alleged overtime damages during the Released Period. (*Id.* at ¶ 35.) The Individual Payments are provided in Appendix 1 of the Settlement.

Seven Hundred Fifty Dollars ($750.00) will be paid to Representative Plaintiff, in addition to her Individual Payment, for her service as the Representative Plaintiff. (*Id.* at ¶ 36.) In addition, Fifty Thousand Dollars ($50,000.00) will be paid to Plaintiffs' Counsel for attorneys' fees and $5,572.00 for costs expended in the action, including the out-of-pocket costs associated with administering the Notice to the Class. (*Id.* at ¶¶ 37, 48.)

In exchange, the Action will be dismissed with prejudice, and the Plaintiffs will release First Solar from all federal and state wage-and-hour claims, rights, demands, liabilities and causes

of action, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses pursuant to the Fair Labor Standards Act ("FLSA") and corresponding state wage and hour statutes alleged in the Complaint for the Released Period.
.

### III.    THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Chastity L. Christy, and as explained below, Court approval is warranted on all scores.

#### A.    The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

5

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.  As shown below and in the Christy, Declaration (*see* Exhibit 2), the standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, including claims for unpaid hours worked.  The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a qualified and well respected Magistrate Judge.  As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex wage and hour cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA.  (Ex. 2, ¶ 27.)  First Solar claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period.  (*Id*. at ¶ 27.)  In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA.  (*Id.*)

If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling.  (*Id*. at ¶ 38.)  The Parties would be required to engage in extensive

briefing regarding collective class certification, decertification, Rule 23 Class Certification, and summary judgment. (*Id*.) Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties and the potential for up to 1600 Class Members in the litigation if it was certified as Rule 23 Class Action. (*Id*.) The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and Opt-In Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (*Id.* at ¶ 47.)

        3)        **Investigation Was Sufficient to Allow the Parties to Act Intelligently**

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. (*Id.* at ¶¶ 19-25.) Relevant information was exchanged including a complete analysis of each Opt-In Plaintiff's alleged overtime damages with respect to the claims alleged in the lawsuit. (*Id.* at ¶ 20.) Counsel obtained and reviewed detailed payroll records for Plaintiff and Opt-In Plaintiffs, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.* at ¶¶ 20-21.) In addition, Plaintiff's Counsel obtained investigation notes and declarations from Representative Plaintiff and numerous other employees who are members of the proposed class, and the legal issues in the case were thoroughly researched by counsel for the Parties. (*Id.* at ¶ 19.) All aspects of the dispute are well-understood, and were vehemently argued, by both sides. (*Id.* at ¶ 21.)

        4)        **The Risks of Litigation Favor Approval**

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues law and while Plaintiffs' success at trial with respect to the three (3) year statutory period and liquidated damages is far from

7

guaranteed. In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, First Solar raises affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. Even if Plaintiffs were to succeed on the merits, this Court or a jury could also find that First Solar did not act willfully, and thus a two (2) year statute of limitations would apply. (*Id.* at ¶ 40.) Finally, a jury could find that First Solar acted in good faith, and thus no liquidated damages would not be awarded. (*Id.*) All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id.*)

### 5) Counsel and Class Representative Favor The Settlement

Plaintiffs' range of possible recovery is also open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate. (*See* Exhibit 2.) Plaintiffs' Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement. (*Id.*) Representative Plaintiff attended the mediation,

8

has been fully informed and involved in the settlement process, and agrees to the Settlement. (*Id.* at ¶ 36.) *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6) The Reaction of Absent Class Members

The absence of class member objection indicates that the class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, there are no objections by Opt-In Plaintiffs. However, unlike a Rule 23 Class Action settlement, each Opt-In Plaintiff has chosen to Opt-In to this Action already and to designate Representative Plaintiff Megan Pryke and Plaintiffs' Counsel as their representatives for purposes of any settlement. Other members of the class who did not opt into this Action are not included in the settlement or bound by it.

### 7) Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The settlement ends complex litigation that has been pending for a little over a year and provides substantial relief to Opt-In Plaintiffs and avoids protracted, costly litigation. *See Brotherton*, 141 F. Supp. 2d at 905-06. The terms of the settlement are equitable and provide a reasonable resolution of the action. As detailed below, each Plaintiff will receive over 100% of their overtime compensation and 32% of their liquidated damages based on Plaintiffs' calculations, *after* the deduction of attorneys' fees and costs and a service award. (Ex. 2 at ¶ 34.) Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the Opt-In Plaintiffs. (*Id.* at ¶ 40.) In

9

fact, rulings by this Court or a verdict by a jury could result in less of recovery for Plaintiff and Opt-In Plaintiffs if this Court or a jury were to rule in favor of First Solar on certain disputed issues of law. (*Id.* at ¶¶ 40-41.)

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and Opt-In Plaintiffs.

As shown above, the seven-factor standard supports approval of the Settlement. The Parties' counsel have extensive experience litigating FLSA claims and state wage and hour claims, and there is no fraud or collusion. (See Exhibit 2.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. (*Id.* at ¶ 43.) The Parties have engaged in substantial investigation prior to and during the negotiations, and the issues are well understood by both sides. (*Id.* at ¶¶ 19-25.) The outcome is uncertain for Plaintiffs, and the risks of continued litigation are evident for both sides. (*Id.* at ¶¶ 38-42.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff. All individual payments have been calculated proportionally on each Representative Plaintiff and Opt-In Party Plaintiff's alleged overtime damages during the Calculation Period. The Calculation Period for Plaintiffs shall mean the period between October 29, 2018 and November 12, 2021. (*Id*. at ¶ 32.)

During the Calculation Period, Plaintiffs were allegedly denied $51,998.44 in overtime compensation for First Solar's failure to include bonuses, gifts, prizes, YouShine pay, and

additional pay in the regular rate for purposes of calculating overtime compensation over a three (3) year period, based on Plaintiffs' calculations. (*Id*. at ¶ 32.) During the two (2) year period, Plaintiffs were allegedly denied $43,502.24 based on Plaintiffs' Counsel's calculations.

First Solar claimed that, in the event liability could be established, it was entitled to an offset, which would reduce the overtime compensation owed to Plaintiffs during the three (3) year period to $38,371.82 and during the two (2) year period to $22,603.64. (*Id*. at ¶ 33.)

If approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation and liquidated damages for a three (3) year time period, based on Plaintiffs' Counsel's calculations. Pursuant to the Settlement, each Plaintiff will receive 100% of their overtime compensation and 32% of liquidated damages, based on Plaintiffs' calculations, *after* the deduction of attorneys' fees and costs and a service award. (*Id*. at ¶ 34.) Or put another way, each Plaintiff will receive almost 135% of their overtime compensation and 43% of their liquidated damages for the three (3) year period based on First Solar's calculations. (*Id*.)

The Parties reached agreement by resolving *bona fide* disputes. Accordingly, the settlement proceeds are fair, reasonable and adequate.

    **C.**    **Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the First Solar, and the costs of the action." 29 U.S.C. § 216(b).

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff and the class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing

11

of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee in this matter.

The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Opt-In Plaintiffs. In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The allocation to the Plaintiffs represents 100% of their overtime compensation and 32% of liquidated damages, based on Plaintiffs' Counsel's

12

calculations, *after* deduction of the service award to Plaintiff, attorneys' fees, and litigation reimbursements to Counsel.  (*Id*. at ¶ 34.)

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).  The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation.  (Ex. 2*,* ¶ 39.)  At every step of the litigation, First Solar could have succeeded on certain legal issues.  (*Id*.)  If First Solar were to be successful on their arguments regarding credit for the offsets and that the 2-year statute of limitations applies, Plaintiffs' overtime compensation would be reduced to $22,603.64, according to First Solar's calculations.  (*Id.* at ¶ 41.)  Therefore, Plaintiffs were at risk of a payment less than they would receive in this matter if the Settlement is approved.  (*Id.*)  This risk of a reduced payment strongly supports the amount requested here.  (*Id.* at ¶ 42.)

Plaintiffs' Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses.  (*See* Exhibit 2.)  Plaintiffs' Counsel has worked diligently in representing Plaintiff and Opt-In Party Plaintiffs.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and First Solar.  (*Id.* at ¶ 19.)  This included interviewing and obtaining declarations from putative class members.  (*Id*.)

The litigation expenses sought to be reimbursed are proper and reasonable.  Plaintiffs' Counsel has incurred expenses in the amount of $5,572.00, which includes the cost of

13

administration of the Notice to all putative class members. (*Id.* at ¶ 48.)  All expenses were incurred during the course of the litigation of this Action. (*Id.*)

### D. The Service Award to Representative Plaintiff is Fair and Reasonable

The Settlement contemplates providing a $750.00 Service Award to Representative Plaintiff.  Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper.  As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)).  *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Counsel's Declaration (*see* Exhibit 2) establishes that the proposed

Service Award is proper and reasonable. (Ex. 2, ¶ 36.) Representative Plaintiff's services were effective. (*Id*.) She provided extensive factual information to Plaintiffs' Counsel and faithfully engaged in numerous and extensive calls and other communications with Plaintiffs' Counsel. (*Id*.) Moreover, she subjected herself to the responsibilities of serving as named Plaintiff in a lawsuit against his former employer. (*Id*.) Finally, she attended the mediation and was helpful to Counsel in assisting with the settlement. (*Id*.) The requested payment is proportional to service payments awarded to plaintiffs in other FLSA actions. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.,* No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.,* No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff)*; Arledge v. Domino's Pizza, Inc.,* No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Coleman v. Trophy Nut Co.,* Case No. 3:19-cv-374 (S.D. Ohio Feb. 17, 2021 (Rose, T.)(awarding $2,500 service payment in $170,000 settlement)(; *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).

### IV.     <u>CONCLUSION</u>

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 3.

Respectfully submitted,

15

| | |
|---|---|
| /s/ Chastity L. Christy | /s/ Elizabeth Bolduc |
| Chastity L. Christy (0076977) | Carrie L Urrutia |
| Anthony J. Lazzaro (0077962) | Lynn Vuketich Luther |
| Lori M. Griffin (0085241) | Elizabeth Bolduc |
| The Lazzaro Law Firm, LLC | Eastman & Smith Ltd. |
| The Heritage Building, Suit 250 | One Seagate, 24th Floor |
| 34555 Chagrin Boulevard | P.O. Box 10032 |
| Moreland Hills, Ohio 44022 | Toledo, Ohio 43699 |
| Phone: 216-696-5000 | Phone: 419-247-1746 |
| Facsimile: 216-696-7005 | Facsimile: 419-247-1777 |
| chastity@lazzarolawfirm.com | clurrutia@eastmansmith.com |
| anthony@lazzarolawfirm.com | lvluther@eastmansmith.com |
| lori@lazzarolawfirm.com | Elbolduc@eastmansmith.com |
| *Attorneys for Plaintiffs* | Attorneys for First Solar, Inc. |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2022, a copy of the foregoing *Joint Motion For Approval Of Settlement And Stipulation Of Dismissal With Prejudice* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Chastity L. Christy
Chastity L. Christy